UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 21-80342-CIV-MATTHEWMAN

SUZANNE DIEFFENBACH o/b/o
MICHAEL DIEFFENBACH, Dec.,

      Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

      Defendant

_____/

FILED BY ___KJZ___ D.C.

Aug 17, 2022

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - West Palm Beach

**ORDER ON MOTIONS FOR SUMMARY JUDGMENT [DEs 27, 28]**

THIS CAUSE is before the Court upon Plaintiff, Suzanne Dieffenbach o/b/o Michael Dieffenbach, Dec.'s ("Plaintiff") Motion for Summary Judgment [DE 27], and Defendant, Commissioner of Social Security Administration's ("Defendant") Motion for Summary Judgment [DE 28]. Plaintiff has also filed a reply [DE 30]. The motions are fully briefed and ripe for review. The issue before the Court is whether the record contains substantial evidence to support the denial of benefits to Plaintiff and whether the correct legal standards have been applied. *Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988).

**I. FACTS**

On November 27, 2017, Mr. Dieffenbach filed a Title II application for a period of disability and disability insurance benefits, alleging disability beginning on May 23, 2017. [R. 21].[1] The claim was denied initially and upon reconsideration. [R. 71]. Following a hearing on November 6, 2019, the Administrative Law Judge ("ALJ"), Sylvia H. Alonso, issued a decision

---

[1] All references are to the record of the administrative proceeding filed by the Commissioner at Docket Entry 19.

on November 26, 2019, denying Mr. Dieffenbach's request for benefits. [R. 71–81]. A request for review was filed by Mr. Dieffenbach with the Appeals Council and denied on June 16, 2020. [R. 49–54].

### A. Hearing Testimony

The ALJ held a hearing on November 6, 2019. [R. 91]. Mr. Dieffenbach was represented by an attorney at the hearing. [R. 91]. Mr. Dieffenbach, who is now deceased, was 53 years old at the time of the hearing. [R. 43]. His testimony established the following facts.

Mr. Dieffenbach was married with two children who were 18 and 19 years old. [R. 97]. He resided with his children and his wife. [R. 97]. Mr. Dieffenbach had no current source of income, and his wife handled the finances. [R. 97]. Mr. Dieffenbach had recently sold their last home, which they had renovated, so the profits from that sale were still sitting in the bank. [R. 97]. They were living off savings. [R. 97]. Mrs. Dieffenbach had last worked for Pfizer in 2017, just prior to Mr. Dieffenbach's stroke. [R. 97]. Mr. Dieffenbach moved to Florida about five years prior to the hearing, but his wife and kids moved down before him. [R. 99].

Mr. Dieffenbach did not have a driver's license and last drove in 2017 prior to his stroke. [R. 99]. His wife or son drove him around. [R. 99]. Mr. Dieffenbach graduated from high school and then went right into construction. [R. 99]. Mr. Dieffenbach worked at DG USA in 2004 selling glass and plastic packaging containers to maple syrup manufacturers. [R. 100]. At that job, Mr. Dieffenbach had to lift less than 20 pounds and spent 50% of his time standing and 50% of his time sitting. [R. 100]. In 2005, Mr. Dieffenbach worked for Literary Brewing selling food packaging. [R. 101]. He telecommuted and also attended specialty food shows. [R. 101]. He did not have to do any lifting or carrying. [R. 101]. In 2006 and 2007, Mr. Dieffenbach rehabilitated a

home for profit, but he worked for himself along with his wife. [R. 102]. He did quite a bit of lifting and lifted over 50 pounds. [R. 102]. When he worked for North Jersey Media Group, Mr. Dieffenbach sold advertising space in newspapers. [R. 103]. He lifted around 20 pounds and spent half his time sitting and half his time standing. [R. 103]. Finally, from 2014 through 2017, Mr. Dieffenbach rehabilitated a house. [R. 103].

Mr. Dieffenbach stopped working in 2017 when he tripped over a box and fell backwards through a railing. [R. 104]. He was told he had head trauma. [R. 104]. Then his left arm started going numb, and he was unable to focus on what he was doing. [R. 104]. He had an MRI and then went to the emergency room where he found out he had had a stroke. [R. 104]. Because of the stroke, Mr. Dieffenbach could not see things from his left side, had trouble keeping focus, had trouble following written directions, could not do daily activities like cooking or laundry, lost weight, could not read or type or write, and could not drive. [R. 104]. Mr. Dieffenbach lost his driver's license due to his stroke. [R. 105]. When Mr. Dieffenbach spoke with doctors, sometimes he could not remember the conversation by the end of the appointment. [R. 105]. Mr. Dieffenbach also got frustrated and extremely angry very quickly. [R. 105]. He was instructed a week before the hearing to use a cane due to his poor gait. [R. 106]. Mr. Dieffenbach also had balance issues. [R. 106].

Mr. Dieffenbach could not walk a full block. [R. 107]. He could stand for ten minutes at a time before he would lose his balance. [R. 107]. He did not really have limitations with sitting, but he usually spent his time lying on the couch watching court TV. [R. 107]. Mr. Dieffenbach had trouble following the events on television. [R. 107]. Mr. Dieffenbach could lift and carry 10–15 pounds for a short period of time. [R. 108]. He could not keep his train of thought and had difficulty

3

following his wife's directions. [R. 108]. While Mr. Dieffenbach could bathe, he had some issues getting dressed, and his son shaved him and helped him tie his ties. [R. 108]. Other than watching court TV, on an average day, Mr. Dieffenbach made his daughter coffee and sat with his kids in the morning. [R. 108]. He could not cook because he could not follow a recipe and almost burned the house down once. [R. 109].

The vocational expert, Sena Moran, testified next. Ms. Moran classified Mr. Dieffenbach's past work. [R. 111]. The ALJ asked Ms. Moran a hypothetical in which an individual of the same age, education, and work experience as Mr. Dieffenbach was capable of

> performing the full range of light work with the following exertional limitations, can sit for six hours [in] an eight-hour day. Can stand six hours in an eight-hour day. Can frequently climb ramps and stairs; occasionally ladders, ropes and scaffolds; frequently balance, stoop[,] kneel, crouch[,] crawl. No exposure to hazards such as unprotected heights and moving mechanical parts such as power tools.

[R. 112]. The vocational expert concluded that the hypothetical individual could perform Mr. Dieffenbach's past work as a sales representative in advertising and as a sales representative in general merchandise but could not perform Mr. Dieffenbach's past work as a contractor. [R. 112]. The vocational expert explained that the hypothetical individual could also perform the following additional jobs: cashier II, stock checker, and order caller. [R. 112]. The vocational expert stated that her testimony was consistent with the DOT and was also based on her experience in the field of job placement. [R. 113].

The ALJ then added additional limitations of "can understand, remember and carry out simple instructions; can tolerate occasional interaction with supervisors, coworkers, and the public; and can concentrate and persist into our [sic] segments over an eight hour day to perform simple tasks." [R. 113]. At that point, the vocational expert stated that such an individual could not

4

perform any of Mr. Dieffenbach's past work but could still work as a stock checker and could also work as a marker or a page. [R. 113–114]. The ALJ then added the additional limitations of "can handle work with large or small objects and can avoid ordinary hazards such as boxes on the floor[,] doors ajar and approaching people or objects." [R. 114]. The vocational expert explained that the hypothetical individual could not work as a stock checker or marker. [R. 115]. The following exchange then took place:

> Q: I said can handle work with large and small objects and can avoid ordinary hazards such as boxes on the floor[,] doors ajar and approaching people or objects.[R. 115].
> A: Oh so he can avoid. I, I apologize, Your honor—
> Q: No no, can, can.
> A: --then these positions would remain.
> Q: Okay, so the alternative jobs that you provided would they remain?
> A: Yes they would.
> Q: Okay. And again, that's a representative sampling of jobs?
> A: Yes.

[R. 115].

Mr. Dieffenbach's counsel asked the vocational expert whether, if she added to the third hypothetical that the individual was going to be off task approximately 25% of the time, the individual would be able to do those jobs. [R. 115]. The vocational expert responded that such an individual would not be able to do those jobs. [R. 116]. Finally, counsel asked if the individual could perform those jobs if he required the use of a cane. [R. 116]. The vocational expert responded that the individual could not perform those jobs. [R. 116].

### B.   Medical Record Evidence

In reaching her decision to deny Mr. Dieffenbach's benefits, the ALJ reviewed the medical evidence of record. The record evidence is summarized in the parties' motions for summary judgment [DEs 27, 28], and there is no need for the Court to restate the evidence in this Order

5

given the Court's ruling below.

### C.   ALJ Decision

The ALJ issued her decision on Mr. Dieffenbach's claim for benefits on November 26, 2019. [R. 71–83]. The ALJ first found that Mr. Dieffenbach last met the insured status requirements of the Social Security Act on December 31, 2018. [R. 73]. Next, she found that Mr. Dieffenbach did not engage in substantial gainful activity during the period from his alleged onset date of May 23, 2017, through his date last insured of December 31, 2018. [R. 73]. Third, the ALJ determined that, through the date last insured, Mr. Dieffenbach had the following severe impairments: neurocognitive disorder and status-post cerebral vascular accident (CVA) with loss of depth perception and visual field. [R. 74]. The ALJ found that, while the record references depression, the evidence fails to support that this impairment causes more than mild deficits to basic work activities. [R. 74]. Thus, the "paragraph B" criteria were not satisfied. [R. 74]. The ALJ also found that the evidence failed to establish the presence of "paragraph C" criteria. [R. 74]. Thus, according to the ALJ, Mr. Dieffenbach's referenced depression is not severe. [R. 74]. The ALJ also concluded that Mr. Dieffenbach's deep vein insufficiency, ischemia, hyperlipidemia, diabetes mellitus, right hand/joint impairment, and nutcracker esophagus also were not severe. [R. 74–75].

Next, the ALJ found that Mr. Dieffenbach did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. [R. 75]. Accordingly, the ALJ determined that Mr. Dieffenbach had the following Residual Functional Capacity ("RFC") through the date last insured:

> to perform light work as defined in 20 CFR 404.1567(b) except that he could lift and/or carry 20 pounds occasionally and 10 pounds frequently; he could stand

>and/or walk for 6 hours total during an 8 hour workday; and sit for up to 6 hours during an 8 hour workday; he could frequently climb ramps/stairs, balance, stoop, kneel, crouch, crawl; he could occasionally climb ladders/ropes/scaffolds; he could handle work with large and small objects, but avoid ordinary hazards such as boxes on the floor, doors ajar and approaching people or objects, unprotected heights, moving mechanical parts, such as power tools; he could understand, remember and carry out simple instructions; can tolerate occasional interaction with supervisors, coworkers and the public; he could concentrate and persist in 2 hour segments over an 8 hour day to perform simple and routine tasks.

[R. 76]. The ALJ attested that, in coming to this determination, she had considered all of Mr. Dieffenbach's symptoms and "the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence," as well as the medical opinions and prior administrative medical findings. [R. 76]. As to those considerations, she found that Mr. Dieffenbach's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [Mr. Dieffenbach's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record . . . ." [R. 77].

With respect to this inconsistency, the ALJ explained that the "evidence shows greater functionality and findings on physical examinations. Further, there are inconsistencies between the claimant's allegations and his actual testimony, which demonstrated a clear question and answer period without confusion or memory delays, including about events that happened as recently as the week of the hearing in which the claimant was prescribed a cane for walking, and going back to 2004 with reciting details about past work." [R. 77]. The ALJ further explained, "[a]s for medical opinion(s) and prior administrative medical finding(s), the undersigned cannot defer or give any specific evidentiary weight, including controlling weight, to any prior administrative medical finding(s) or medical opinion(s), including those from medical sources." [R. 77]. The ALJ

then summarized the relevant record evidence. [R. 77–81].

> The ALJ found that
>
> the State agency consultants affirmed the prior State agency findings regarding the claimant's retained residual functional capacity of less than light exertion. The undersigned finds these opinions partially supported and consistent with evidence, which typically shows the claimant was in no acute distress, full or nearly full strength and range of motion and normal muscle tone and bulk, in addition to routine findings that the claimant was alert and oriented. However, the undersigned has found that the claimant's cognitive disorder is severe and the established residual functional capacity reflects associated limits (Exhibits 1A-5A, 2F, 6F-8F, 12F, 17F, 19F, 23F-26F, 30F-31F and 33F).

[R. 80]. Next, the ALJ explained that

> While the claimant underwent neuropsychological testing in April 2018, he was uncooperative and did not finish. However, it was nevertheless found that he had a neurocognitive disorder associated with the CVA, which was believed to manifest as anger. The undersigned finds this opinion partially persuasive to the extent that it is consistent with the opinion of November 2017 in which the claimant's driving privileges were medically ceased, but does not find it not fully supported based on the more recent evaluation in which the claimant had no deficits and was medically cleared to resume driving. Further, his lucid testimony at hearing in which, despite alleging he had trouble focusing and with his memory, he was responsive to all questions and was able to recall remote and recent details, as well as other evidence showing him to be alert and oriented (Exhibits 2F, 6F-7F, 19F, 21F, 27F, 32F and 34F).

[R. 80]. The ALJ found the medical source statement dated May 2018 to not be persuasive because

it

> is wholly inconsistent with and unsupported by the record and as referenced herein, the claimant's own rather lucid testimony, in which he provided clear, responsive answers to all questions while demonstrating the ability to recall specific details regarding job lifting requirements and duties of remote past work some 15 years ago, as well as recent events such as being prescribed a cane earlier in the week of the hearing. Indeed, beyond the claimant's date last insured, a mental medical opinion conducted by this same medical source concluded that the claimant had no deficits and rendered the claimant medically cleared to resume driving. As for limits of less than sedentary exertion, these dire limits are later refuted by this medical source some five months later, finding the claimant had normal muscle tone and strength, with intact attention and memory, as well as denying fatigue, weakness

and visual loss. Elsewhere in the record some two months prior to this opinion, treatment notes again show normal muscle tone/strength, coordination and independent gait. (Exhibit 22F, 28F, 34F).

[R. 80–81]. In sum, the ALJ concluded that "[n]on-medical and medical sources, respectively essentially agreed with the findings of the State agency regarding the claimant's retained residual functional capacity. One medical consultant concluded that the claimant's poor cooperation did not appear to be related to a neurological disorder. These opinions of medical sources have been discussed herein (Exhibits 29F-31F)." [R. 81]. She also noted that "[a]s recently as this year, the same medical source who concluded in May 2018 that the claimant was limited to less than sedentary exertion and would be off task 25 percent of the time, several months later found no deficits and medically cleared the claimant to resume driving (Exhibits 2F, 28F and 34F)." [R. 81].

The ALJ explained that Mr. Dieffenbach was unable to perform any past relevant work. [R. 82]. The ALJ noted that Mr. Dieffenbach was an individual closely approaching advanced age on the date last insured, had at least a high school education, and was able to communicate in English. [R. 82]. The ALJ also noted that transferability of job skills was not an issue in this case because Mr. Dieffenbach's past relevant work was unskilled. [R. 82]. The ALJ concluded that, based on the testimony of the vocational expert, through the date last insured, considering Mr. Dieffenbach's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Mr. Dieffenbach could have performed. [R. 82]. These jobs include marker, DOT# 209.587-034, light, SVP2, with 54,000 national jobs; page, DOT# 249.687-014, light, SVP 2, with 14,000 national jobs; stock checker, DOT# 299.667-014, light, SVP2, with 6,300 national jobs. [R. 83]. Thus, the ALJ found that Mr. Dieffenbach had not been under a disability from May 23, 2017, through December 31, 2018. [R. 83].

## II. MOTIONS FOR SUMMARY JUDGMENT

In her Motion for Summary Judgment, Plaintiff argues that new and material evidence, which was not available during the administrative proceedings, merits remand pursuant to sentence six of the Social Security Act; the ALJ's decision did not properly state or assess the persuasiveness of all medical source opinions; and the ALJ's Step Five finding was unsupported by substantial evidence. [DE 27].

In Defendant's Motion for Summary Judgment with Supporting Memorandum of Law and Opposition to Plaintiff's Motion for Summary Judgment, Defendant asserts that substantial evidence supports the Commissioner's decision that Mr. Dieffenbach is not disabled and that the Commissioner applied the proper legal standards; the additional evidence provided by Plaintiff to this Court does not warrant remand; the ALJ properly considered the medical source opinions; and the scrivener's error in the RFC does not undermine the substantial evidence supporting the ALJ's finding at Step Five. [DE 28].

## III. RELEVANT LAW

Judicial review of the factual findings in disability cases is limited to determining whether the Commissioner's decision is "supported by substantial evidence and based on proper legal standards. Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." 42 U.S.C. § 405(g); *Crawford v. Comm'r of Soc. Sec.*, 363 F. 3d 1155, 1158 (11th Cir. 2004) (per curiam) (internal citation omitted) (quoting *Lewis v. Callahan*, 125 F. 3d 1436, 1439 (11th Cir. 1997)). Courts may not "decide the facts anew, reweigh the evidence, or substitute [their] judgment for that of the [Commissioner]." *Phillips v. Barnhart*, 357 F. 3d 1232, 1240 n.8 (11th Cir. 2004) (quoting

*Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

The restrictive standard of review set out above applies only to findings of fact. No presumption of validity attaches to the Commissioner's conclusions of law. *Brown v. Sullivan*, 921 F.2d 1233, 1236 (11th Cir. 1991); *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). "The [Commissioner's] failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal." *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F. 3d 1253, 1260 (11th Cir. 2007) (alteration in original) (quoting *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991)).

Social Security regulations establish a five-step sequential analysis to arrive at a final determination of disability. 20 C.F.R. § 404.1520; 20 C.F.R. § 416.920 (a)–(f). The ALJ must first determine whether the claimant is presently employed. If so, a finding of non-disability is made, and the inquiry concludes. 20 C.F.R. § 404.1520(b). In the second step, the ALJ must determine whether the claimant suffers from a severe impairment or combination of impairments. If the ALJ finds that claimant does not suffer from a severe impairment or combination of impairments, then a finding of non-disability results, and the inquiry ends. 20 C.F.R. § 404.1520(c).

Step three requires the ALJ to compare the claimant's severe impairment(s) to those in the listing of impairments. 20 C.F.R. § 404.1520(d), subpart P, appendix 1. Certain impairments are so severe, whether considered alone or in conjunction with other impairments, that, if they are established, the regulations require a finding of disability without further inquiry into the claimant's ability to perform other work. *See Gibson v. Heckler*, 762 F.2d 1516, 1518 n.1 (11th Cir. 1985). If the impairment meets or equals a listed impairment, disability is presumed and benefits are awarded. 20 C.F.R. § 404.1520(d).

Step four involves a determination of whether the claimant's impairments prevent him or her from performing his or her past relevant work. If the claimant cannot perform his or her past relevant work, then a *prima facie* case of disability is established. 20 C.F.R. § 404.1520(e). The burden then shifts to the ALJ to show at step five that, despite the claimant's impairments, he or she is able to perform work in the national economy in light of the claimant's RFC, age, education, and work experience. 20 C.F.R. § 404.1520(f); *Phillips*, 357 F. 3d at 1239. In order to determine whether the claimant has the ability to adjust to other work in the national economy, the ALJ may either apply the Medical Vocational Guidelines, 20 C.F.R. pt. 404 subpart P, appendix 2, or utilize the assistance of a vocational expert. *See Phillips*, 357 F. 3d at 1239–40.

## IV. ANALYSIS

### A. Whether the New Evidence Requires Remand

Plaintiff has submitted to this Court new evidence—a Certification of Death for Michael Dieffenbach dated January 12, 2021, which was filed with the State of Florida. *See* R. 8. The Certification of Death states that Mr. Dieffenbach passed away on December 30, 2020, at the Hospice of Palm Beach County in a natural death due to "Gerstmann-Straussler-Scheinker Syndrome" ("GSS"). [R. 8]. Plaintiff argues that this death certificate mandates a sentence six remand; Defendant contends that it does not.

"[A] sixth-sentence remand [under 42 U.S.C. § 405(g)] is appropriate only when the district court learns of evidence not in existence or available to the claimant at the time of the administrative proceeding that might have changed the proceeding's outcome." *Sullivan v. Finkelstein*, 496 U.S. 617, 618, 110 S.Ct. 2658, 110 L.Ed.2d 563 (1990). "To obtain a remand under sentence six, a claimant must demonstrate that '(1) there is new, noncumulative evidence;

(2) the evidence is "material," that is, relevant and probative so that there is a reasonable possibility that it would change the administrative result, and (3) there is good cause for the failure to submit the evidence at the administrative level.'" *Reeves v. Comm'r, Soc. Sec. Admin.*, 817 F. App'x 898, 901 (11th Cir. 2020) (quoting *Hunter v. Comm'r of Soc. Sec. Admin.*, 808 F.3d 818, 821 (11th Cir. 2015)). The new evidence must relate to the period on or before the date of the ALJ's decision. *See Wilson v. Apfel,* 179 F.3d 1276, 1279 (11th Cir.1999); *cf.* 20 C.F.R. §§ 404.970(b), 416.1470(b) (requiring Appeals Council to consider new evidence "only where it relates to the period on or before the date of the administrative law judge hearing decision").

Here, there is new, noncumulative evidence. Plaintiff has also shown good cause for the failure to submit the Certification of Death at the administrative level since the Certification of Death did not yet exist. Thus, the only real issue is whether the Certification of Death is material, which requires the Court to analyze whether the Certification of Death is relevant and probative and whether there is a reasonable possibility that it would change the administrative result. In her papers, Defendant explains that "[e]vidence of deterioration of a previously-considered condition may subsequently entitle a claimant to benefit from a new application, but it is not probative of whether a person is disabled during the specific period under review." *Enix v. Comm'r of Soc. Sec.*, 461 F. App'x 861, 863 (11th Cir. 2012) (citing *Wilson,* 179 F.3d at 1279). However, in this case, the specific condition at issue, GSS, was not previously considered. Thus, the *Enix* case is inapposite.

According to the literature cited by Plaintiff, GSS is a progressive degeneration of the cerebellum along with different degrees of dementia, and the average survival rate of the disease is five years after diagnosis. [DE 27 at 6]. The parties clearly agree that GSS is a progressive

13

disease. *See* DE 28 at 11. Furthermore, the ALJ determined that, through the date last insured, Mr. Dieffenbach suffered from a neurocognitive disorder. Thus, the Certification of Death and its listing of GSS as Mr. Dieffenbach's cause of death very well may relate to the period on or before the date of the ALJ's decision. And the fact that the death certificate is from over three years after the disability claim period does not necessarily make it irrelevant. *See Onge v. Comm'r of Soc. Sec.*, No. 2:19-CV-84-FTM-66NPM, 2020 WL 6729411, at *7 (M.D. Fla. Oct. 30, 2020), *report and recommendation adopted sub nom. St. Onge v. Commisioner of Soc. Sec.*, No. 219CV00084JLBNPM, 2020 WL 6802839 (M.D. Fla. Nov. 19, 2020) (finding new evidence, including a death certificate to be material with regard to a sentence six remand when the new evidence related back to the period prior to the ALJ's decision because the records included information about medical conditions and symptoms pre-dating the ALJ's decision).

Additionally, Plaintiff argues that the new evidence rebuts multiple findings made by the ALJ, such as that Mr. Dieffenbach's symptoms were expected to improve and that his poor cooperation was unrelated to a neurological disorder. [DE 27 at 7; DE 30 at 3]. Defendant has not specifically responded to this argument in her papers and has thus waived any response. Based on the foregoing, the Court finds that remand pursuant to sentence six is appropriate here.

### B. Whether the ALJ's Decision Properly Evaluated the Medical Source Opinions

Plaintiff argues that the "ALJ erroneously evaluated DDS opinions from a lay source and the medical and psychological consultants as a group. Multiple medical source opinions are not sufficiently assessed. Furthermore, the ALJ did not provide sufficient rationale relating to the opinions that were assessed, or explain what portions of the partially credited opinions were adopted or rejected." [DE 27 at 7].

14

Defendant, on the other hand, contends that (1) the ALJ did not improperly group her discussion of prior administrative medical findings and did, in fact, properly assess them; (2) the reference to the group of prior administrative medical findings was not error, and, to the extent the court determines it was error, any error would be harmless; (3) the ALJ properly assessed the evaluation completed by psychologist Dr. Restropo; (4) the ALJ was not required to make a finding regarding persuasiveness as to Dr. Silvers' treatments notes or Dr. Silvers' opinion as to whether Mr. Dieffenbach could work because they did not constitute a medical opinion; (5) the RFC is not inconsistent with Dr. Silvers' and Dr. Malek's statements that Mr. Dieffenbach may have a limitation and that such statements are not medical opinions anyway; and (6) and the ALJ made no error regarding Dr. Messing. [DE 28 at 14-17].

In response to Defendant's motion for summary judgment, Plaintiff asserts that the "ALJ does need to state how 'persuasive' an opinion was found. The multiple errors and omissions in the ALJ's assessment of the opinion evidence are not harmless, demonstrate that the opinions were not properly considered, and merit remand." [DE 30 at 4].

Here, since the Court finds merit in Plaintiff's first argument, the Court declines to fully address Plaintiff's second argument. *See, e.g.*, *Acree v. Comm'r of Soc. Sec.*, No. 6:20-CV-591-EJK, 2021 WL 2853557, at *1 (M.D. Fla. May 7, 2021); *Guerrier on behalf of L.C. v. Saul*, No. 18-CV-63090, 2020 WL 1034371, at *7 (S.D. Fla. Feb. 14, 2020), *report and recommendation adopted sub nom. Guerrier on behalf of L.C. v. Acting Comm'r of Soc. Sec.*, No. 18-CV-63090, 2020 WL 1033405 (S.D. Fla. Mar. 2, 2020); *Buxton v. Colvin*, No. 5:14-CV-184-OC-MCR, 2015 WL 2106167, at *9 (M.D. Fla. May 6, 2015) (concluding that it was unnecessary to discuss the ALJ's credibility finding because of a possible change in the RFC assessment upon remand); *Kahle*

*v. Comm'r of Soc. Sec. Admin.*, 845 F. Supp. 2d 1262, 1273 n.8 (M.D. Fla. 2012) (finding it unnecessary to address other issues raised by claimant when one issue was dispositive); *Demenech v. Sec'y of Dep't of Health & Human Servs.*, 913 F.2d 882, 884 (11th Cir. 1990) (per curiam) (declining to address plaintiff's remaining arguments due to conclusions reached in remanding the case as to one issue); *Jackson v. Bowen*, 801 F.2d 1291, 1294 n.2 (11th Cir. 1986) (stating that it was unnecessary to review other issues raised on appeal where remand was required and such issues would likely be reconsidered in the subsequent proceedings). However, it is clear upon careful reading of the ALJ's decision and the parties' briefs that the ALJ's assessment of the physicians' medical source opinions is somewhat unclear and difficult to decipher. Thus, the ALJ shall clarify her analysis of the medical source opinions on remand in full compliance with the applicable law and regulations in order to avoid any future issues and to ensure judicial economy.

C. <u>Whether the ALJ's Step Five Finding is Supported by Substantial Evidence</u>

Plaintiff argues that "the step five finding is based on vocational testimony in response to a hypothetical that is the opposite of the ultimate RFC limitation on a critical issue. As a result of the different language between the hypothetical proffered to the vocational witness and the limitation adopted in the ultimate RFC finding, the step five finding is unsupported." [DE 27 at 14]. She further contends that "to the extent there is any ambiguity as to what the ALJ's intention was in the changed term between the hypothetical limitation and the RFC finding, as the Eleventh Circuit noted in *Viverette v. Commissioner of Social Security*, 13 F.4th 1309, 1316 (11th Cir. 2021), remand is the appropriate remedy where additional fact-finding is needed." *Id.* at 15. According to Plaintiff, "[g]iven that whether or not [Mr. Dieffenbach] must avoid specific hazards was outcome determinative, as discussed in detail at the hearing, the substitution of 'but' for 'can'

16

in the RFC determination cannot be assumed to be a mere scrivener's error. Therefore, remand is merited here to resolve the conflict between the outcome-determinative limitations in the hypothetical question proffered to the vocational witness as compared to the RFC finding." *Id.*

Defendant responds that "it is clear from a reading of the ALJ's decision as a whole and from the interchange between the ALJ and the VE at the hearing that the limitation noted by Plaintiff in the RFC is merely a scrivener's error." [DE 28 at 18].

In response to that argument, Plaintiff repeats her prior arguments and also contends that "[w]hether or not [Mr. Dieffenbach] must avoid specific hazards was outcome determinative, and the substitution of 'but' for 'can' in the RFC determination cannot be assumed to be a mere scrivener's error. Therefore, remand is merited here to clarify the RFC finding." *Id.* [DE 30 at 9].

Here, since the Court finds merit in Plaintiff's first argument, the Court declines to fully address Plaintiff's third argument. However, in order to ensure judicial economy and clarify of the record, the ALJ shall resolve the alleged scrivener's error on remand by either amending the RFC or posing an amended hypothetical to a vocational expert.

## IV. <u>CONCLUSION</u>

In light of the foregoing, it is hereby **ORDERED AND ADJUDGED** as follows:

1. Plaintiff's Motion for Summary Judgment [DE 27] is **GRANTED**.[2] Defendant's Motion for Summary Judgment [DE 28] is **DENIED**.

2. The cause is hereby **REMANDED** under sentence six of 42 U.S.C. § 405(g) to the Commissioner to conduct further proceedings as follows:

---

[2] In Plaintiff's Motion for Summary Judgment, Plaintiff ultimately requests that the Court "reverse the Commissioner's decision denying Plaintiff's application for disability benefits and remand this case for further administrative proceedings pursuant to either sentence six or/and sentence four of the Social Security Act." Plaintiff's Motion is therefore being granted since the Court is remanding the case as requested.

   a. re-assess the medical opinions and/or clarify the ALJ's assessment of the medical opinions;

   b. consider the Certification of Death and any related information which will assist the ALJ;

   c. take any further action necessary to complete the administrative record;

   d. hold a hearing before an ALJ so that the new evidence can be taken and considered, and both parties can introduce evidence and/or testimony relevant to the new evidence;

   e. correct any scrivener's error in the RFC and/or correct the hypothetical(s) posed to the vocation expert; and

   f. make additional or modified findings of fact as to the above issues and issue an amended or modified decision as may be necessary.

3. This Court shall **RETAIN** jurisdiction of this case and shall not enter a final judgment pursuant to Federal Rule of Civil Procedure 58 until after post-remand proceedings are completed, and the Commissioner has filed with the Court any such additional and modified findings of fact and decision.

4. The Clerk shall **CLOSE** this case for administrative purposes only.

**ORDERED AND ADJUDGED** in Chambers at West Palm Beach, Palm Beach County, Florida, this 17th day of August, 2022.

*William Matthewman*
WILLIAM MATTHEWMAN
United States Magistrate Judge